### WILLIAM P. WINCHESTER vs. JACOB FORSTER.

It is a sufficient manifestation of the intention of a testator, that real estate acquired by him after the making of his will shall pass thereby, pursuant to the Rev. Sts. c. 62, § 3, where it appears by the whole scheme and tenor of the will, that he intended to make a full and entire disposition of his whole property, real and personal.

THIS action, which was assumpsit for the non-performance of a contract by the defendant, to purchase and pay for certain real estate, was submitted to the court upon an agreed statement of facts.

Thomas D. Bradlee, late of Boston, deceased, made his will on the 7th of July, 1835, and republished the same on the 28th of September following. The testator died in March, 1841, and his will was proved on the 29th of the same month.

The following are the most material parts of the will: —

" As a provision for the comfortable support of my beloved wife Mary, it is my wish to secure for her use the dwelling-house in which we now dwell, and to furnish an income adequate to all her wants. My will therefore is, that the house and land numbered six on Franklin place, if I am not the owner thereof at the time of my decease, shall be purchased at a price not exceeding twelve thousand dollars, and my said wife shall hold and enjoy the same, for and during her natural life. And in case said estate cannot be obtained for

that sum of money, then my will is, that any other estate in said city of Boston, which shall be selected by my said wife, and which can be bought at or below said price, shall be purchased, and my said wife shall hold the same for her life. I also give to my said wife all my household furniture, silver plate and family stores, and I direct that the net income of one third part of all my personal estate shall be paid to her during her natural life or widowhood. To my brother, John W. Bradlee, I give the sum of ten thousand dollars. To my daughter, Eliza Gill, wife of Mr. William P. Winchester, I give fifty thousand dollars. At the decease or intermarriage of my said wife, I give the income of that part of my estate, which I appropriated to the use of my said wife, unto my daughter before named, to be received by her during her life, and in case her said husband survives her, he shall have the said income during his life. The income and produce of all the residue of my estate, I also give to my said daughter, to be enjoyed by her during her life, and her husband; the child or children of my said daughter, which shall survive the parents, shall have and take all my estate, real, personal and mixed, to hold to them, their heirs and assigns, forever, they, if more than one, to share and share alike, provided, however, that if their grandmother, my said wife, shall then be living, she shall continue to receive the income above provided for her. And if it shall happen, that my said daughter shall die without leaving issue surviving her, or, leaving issue, such issue shall die in minority and unmarried, then my will is, that all my estate, real, personal and mixed, shall go to such person or persons as would then be my heirs at law, in case I had then died intestate and without issue."

The will also made provision for advancements out of the capital of the testator's estate to the children of his daughter, on their becoming of age, or marrying, in the lifetime of their parents, or either of them ; and appointed the plaintiff and two other persons trustees under the will, with all powers necessary or expedient for the purpose of fulfilling the provisions contained therein, but without giving bond for their

fidelity, or being answerable for one another. The trustees were also appointed executors.

The testator left issue, a daughter, the plaintiff's wife, for whose use and that of the plaintiff, and of the issue of the daughter, the trusts in the will were created.

The testator, after the republication of his will, September 28th, 1835, purchased certain real estate in Charlestown, and received a conveyance of the same, and was seized thereof at the time of his death.

On the 6th of December, 1847, the plaintiff, in right of his wife, agreed to sell and convey, and the defendant agreed to receive and pay for, the estate in Charlestown, above mentioned, provided the plaintiff would convey the same to him by a perfect title. For this purpose, the plaintiff offered the defendant a deed of the estate in question, duly executed by himself, and his wife, in her right, and containing on the part of the plaintiff the usual covenants of warranty. The defendant declined to receive the deed, on the ground, that it was not in the power of the plaintiff to make a perfect title thereby to the estate.

*W. Sohier*, for the plaintiff.

*J. Lowell*, for the defendant.

SHAW, C. J. The plaintiff having brought an action to enforce the performance of a contract by the defendant, for the purchase of certain real estate, averring the tender of a deed thereof from the plaintiff, and his wife, in her right, in due form of law, and with his own covenants of warranty, the question is, whether such a deed would vest a good title to the estate in question in the defendant. This depends upon the construction of the will of Thomas D. Bradlee, the father of the plaintiff's wife. It is conceded, that the estate referred to was the estate of Bradlee; and that he died seized of it, having made a will in 1835, and republished the same the same year, before the revised statutes went into operation. The testator purchased the estate in question in 1839, and died in 1841, after which his will was duly proved.

The plaintiff maintains, that the estate thus purchased did

not pass by the will, but that it descended as intestate property to the wife of the plaintiff, as the daughter and sole heir at law of the testator; the defendant, on the contrary, insists, that it did pass by the will, and that the deed of the daughter jointly with her husband will not give him a good title.

This question depends on the construction of the Rev. Sts. *c.* 62, § 3, by which it is provided, that "Any estate, right or interest in lands, acquired by the testator, after the making of his will, shall pass thereby in like manner as if possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

This, as it is well known, was a change of an established and inflexible rule of the common law, that after-acquired lands will not pass by devise; which was founded on the English rule of law, that one *having* an estate may devise it.— A devise was regarded as a conveyance, and the devisee as a purchaser; and, like other conveyances, it took effect from its execution. When title was made by devise, the devise, like any other instrument of conveyance, was proved by witnesses before the jury, and was not proved by the probate of the will. This rule referred to the maxim, *Non dat qui non habet;* one cannot transfer property who does not hold it.

But these reasons were somewhat artificial and technical, and, in many cases, had a tendency to defeat the intention of testators; more especially as an entirely different rule prevailed in regard to personal property; which, though acquired after the execution of the will, would pass by it, if such intent was apparent. In most of the cases cited and applicable to this subject, the grounds of decision were, not that the testator did not intend to pass such estate, but that by the rule of the common law, such intention could not be carried into effect. It appears to us, that it was the purpose of the legislature to alter the law in this respect, so as to assimilate the testamentary disposition of real more nearly to that of personal property, and thus to give effect to the intentions of testators.

The words of the statute are, " if it shall clearly and manifestly appear," &c. As was said in the case of *Brimmer* v. *Sohier*, 1 Cush. 132, " It is not supposed that these intensives can have any well defined or precise effect in the construction of wills; they are too vague and indeterminate to form a rule of much practical use."

We are to inquire, then, what is the true construction of this section; and if the object of the statute was to remove a technical difficulty, and to give effect to the intention of the testator, all that can be required is, that, taking the whole will, and considering it with reference to the established rules of exposition, such an intent is shown; if so, the intent is manifest and clear.

What, then, is the intent that must thus appear? It was intimated, in the full and able argument for the plaintiff, on this subject, that it must appear, that the testator, at the time of making his will, had in contemplation the future acquisition of real estate, and in such case intended that it should pass. The argument, when expanded, was this: the old law is the established rule respecting devises; the statute intended a special exception, by giving a power to a testator to pass after-acquired real estate; which power he might execute, if he would, but, like other powers, it would not be deemed to be executed by general words, but only by terms referring to it, and indicating an intent to execute it. But it appears to us, that this conclusion is founded on reasoning much too technical and artificial to accomplish the objects of the legislature. The statute does, in a certain sense, give a new power; that is, it confers upon the owner of real estate the capacity of disposing of his own property, by his own act, according to his own will expressed in the form required by law; but it bears very little analogy to the execution of a technical power.

To hold that it must appear by the will, that the testator knew of the old law, and manifested an intent to avail himself of the right given by this statute to exempt himself and his property from the operation of it, would be to perpetuate

most of the objections which the statute was intended to remove. The law was changed, in this respect, because, in very many cases, testators did not know the old rule of law, and were not aware, that their intentions, when expressed in a will, could not be carried into effect by it; in consequence of which such intentions were often disappointed and defeated

If, therefore, it plainly appears by the will of a testator that he intended thereby to dispose of the property he should leave, whether held at the time of making the will, or acquired afterwards, it is within the operation of the statute to give effect to such intention. And this construction of the statute was adopted in the cases of *Cushing* v. *Aylwin*, 12 Met. 169; and *Brimmer* v. *Sohier*, 1 Cush. 118. Another point was made on this argument, which was, that the statute could not operate upon a will executed and published before the statute took effect. This question was distinctly considered and settled in the case above cited of *Cushing* v. *Aylwin*.

We are then to examine this will. In one respect, there is a clear intention to pass after-acquired estate. It appears that at the time of making the will, the testator lived in a house which he did not own, but contemplated purchasing; and he directed, with certain limitations, that if he should not be the owner thereof at the time of his decease, it should be purchased for the use of his wife, and held by her for her life. Here is a clear implication, that if he should purchase the estate in his lifetime, she should have it by the operation of that will. But the more decisive consideration is, that it appears by the whole scheme and tenor of the will, that he intended to make a full and entire disposition of his whole property, real and personal. After giving furniture, &c., to his wife, and a single pecuniary legacy, he gives a certain proportion of all his property to his wife for her life, which, in regard to the personal estate, is in effect a gift of the income, reserving the capital; and after her decease, the same income, and also the income and produce of all the residue of his estate, to his daughter for life, remainder to her husband for life,

and then over to grandchildren, who "shall have and take all my estate, real, personal and mixed, to hold to them, their heirs and assigns forever." The court are therefore of opinion, that it does manifestly appear to have been the intention *of the testator to make a testamentary disposition of all the estate he should leave at the time of his decease;* and that the after-acquired estate did pass by the will, and did not pass to the heir at law by descent.

*Judgment for the defendant.*